1   John Du Wors, State Bar No. 233913
john@newmanlaw.com
2   NEWMAN DU WORS LLP
2101 Fourth Avenue, Suite 1500
3   Seattle, WA 98121
4   Telephone:   (206) 274-2800
Facsimile:   (206) 274-2801
5

6   Leeor Neta, State Bar No. 233454
leeor@newmanlaw.com
7   NEWMAN DU WORS LLP
1900 Powell Street, Sixth Floor
8   Emeryville, CA 94608
Telephone:   (415) 944-5422
9   Facsimile:   (415) 944-5423

10

11   Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SCOTT WELLER, Individually and on Behalf of All Others Similarly Situated, | Case No. 15-3170 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| SCOUT ANALYTICS, INC., a Washington corporation, SERVICESOURCE INTERNATIONAL, INC., a Delaware corporation, MIKE SMERKLO, an individual, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1    Plaintiff Scott Weller ("Plaintiff") has alleged the following based upon the
2    investigation of Plaintiff's counsel, which included a review of United States Securities
3    and Exchange Commission ("SEC") filings by Scout Analytics, Inc. ("Scout") and
4    ServiceSource International, Inc. ("ServiceSource") (collectively, the "Companies"), as
5    well as regulatory filings and reports, securities analysts' reports and advisories about the
6    Companies, press releases and other public statements issued by the Companies, and
7    media reports about the Companies. Plaintiff believes that substantial additional
8    evidentiary support will exist for the allegations set forth herein after a reasonable
9    opportunity for discovery.

10                              **I.   NATURE OF ACTION**

11   1.    This is a securities class action on behalf of purchasers of the common stock of
12   ServiceSource between January 22, 2014 and May 1, 2014, inclusive (the "Class
13   Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the
14   "Exchange Act").

15                          **II.   JURISDICTION AND VENUE**

16   2.    The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of
17   the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated
18   thereunder by the SEC [17 C.F.R. § 240.10b-5].

19   3.    This Court has jurisdiction over the subject matter of this action pursuant to 28
20   U.S.C. § 1331 and § 27 of the Exchange Act.

21   4.    Venue is proper in this District pursuant to § 27 of the Exchange Act and 28
22   U.S.C. § 1391(b). Many of the acts charged herein, including the dissemination of
23   materially false and misleading information, occurred in this District.

24   5.    In connection with the acts alleged in this Complaint, Defendants, directly or
25   indirectly, used the means and instrumentalities of interstate commerce, including, but
26   not limited to, the mails and interstate telephone communications.

27                              **III.   PARTIES**

28   6.    Plaintiff Scott Weller purchased the common stock of ServiceSource during the

Class Period and has been damaged thereby.

7. Defendant Scout is a cloud-based customer lifecycle management solution designed to maximize customer value and accelerate sustainable growth in revenue and profits. Scout transforms silos of customer data and usage data into predictive analytics and automations that personalize customer interactions at scale. By providing ongoing insight into customer usage, Scout helps companies grow retention rate through customer success, maximize customer lifetime value through add-on and upgrade sales, optimize rate plans, and increase trial conversions. Scout was founded in 2008 and is headquartered in Issaquah, Washington.

8. Defendant ServiceSource provides cloud-based recurring revenue management solutions. The company helps customers drive growth and build relationships across the customer lifecycle with data management, analytics, automation and services capabilities. ServiceSource was founded in 1999 and is headquartered in San Francisco, California. ServiceSource's stock trades on the NASDAQ, an efficient market, under the ticker symbol "SREV".

9. Defendant Mike Smerklo ("Smerklo"), at all relevant times, served as President, Chief Executive Officer ("CEO"), and a director of ServiceSource.

10. During the Class Period, Smerklo, as a senior executive officer and director of ServiceSource, was privy to confidential and proprietary information concerning ServiceSource, its operations, finances, financial condition and present and future business prospects. Smerklo also had access to material adverse non-public information concerning ServiceSource, as discussed in detail below. Because of his position with ServiceSource, Smerklo had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of his possession of such information, Smerklo knew or recklessly disregarded that the

adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

11.     Smerklo is liable as a direct participant in the wrongs complained of herein. In addition, Smerklo, by reason of his status as a senior executive officer and/or director, was a "controlling person" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause ServiceSource to engage in the unlawful conduct complained of herein. Because of his position of control, Smerklo was able to and did, directly or indirectly, control the conduct of ServiceSource business.

12.     Smerklo, because of his position with ServiceSource, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. Smerklo was provided with copies of ServiceSource's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, Smerklo had the opportunity to commit the fraudulent acts alleged herein.

13.     As a senior executive officer and/or director and as a controlling person of a publicly traded company whose common stock was, and is, registered with the NASDAQ and governed by the federal securities laws, Smerklo had a duty to promptly disseminate accurate and truthful information with respect to ServiceSource's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of ServiceSource common stock would be based upon truthful and accurate information. Smerklo's misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14.     Smerklo is liable as a participant in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of ServiceSource common stock by disseminating materially false and misleading statements and/or concealing material

CLASS ACTION COMPLAINT

adverse facts. The scheme: (i) deceived the investing public regarding ServiceSource's business, operations and management and the intrinsic value of ServiceSource common stock; (ii) allowed Smerklo and certain Company insiders to collectively sell their personally held ServiceSource common stock for millions of dollars in proceeds; (iii) allowed Smerklo to obtain millions of dollars in cash bonuses and other perks for fiscal 2012; and (v) caused plaintiff and members of the Class to purchase ServiceSource common stock at artificially inflated prices.

## IV.  CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of ServiceSource during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of ServiceSource, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, ServiceSource common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by ServiceSource or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities

1   litigation.

2       19.   Common questions of law and fact exist as to all members of the Class and

3   predominate over any questions solely affecting individual members of the Class. Among

4   the questions of law and fact common to the Class are:

5           a.    whether the federal securities laws were violated by Defendants' acts as

6                 alleged;

7           b.    whether statements made by Defendants to the investing public during

8                 the Class Period misrepresented material facts about the business and

9                 operations of ServiceSource;

10          c.    whether the price of ServiceSource common stock was artificially inflated

11                during the Class Period; and

12          d.    to what extent the members of the Class have sustained damages and the

13                proper measure of damages.

14      20.   A class action is superior to all other available methods for the fair and efficient

15  adjudication of this controversy since joinder of all members is impracticable.

16  Furthermore, as the damages suffered by individual Class members may be relatively

17  small, the expense and burden of individual litigation make it impossible for members of

18  the Class to individually redress the wrongs done to them. There will be no difficulty in

19  the management of this action as a class action.

20              **V.   SUBSTANTIVE ALLEGATIONS**

21      21.   Defendant Scout Analytics, Inc. ("Scout") is a company that offers multiple

22  platforms through which other companies-particularly information service providers,

23  media publishers and software companies-leverage user data.

24      22.   In early December 2013, Scout and its Board predicted that it would be out of

25  cash within the first quarter of 2014. So they solicited and received proposals for

26  financing.

27      23.   One of the proposals involved an acquisition by Defendant ServiceSource

28  International, Inc. ("ServiceSource").

24. After Scout voted to approve the acquisition by ServiceSource, Defendants issued a joint press release on January 22, 2014 (the "Press Release"). The Press Release provides in pertinent part as follows:

> ServiceSource® (NASDAQ:SREV), the global leader in recurring revenue management, today announced that it has acquired Scout Analytics®, a leading provider of predictive analytics for subscription businesses. With more than $3.5 billion of recurring revenue under management, Scout Analytics extends ServiceSource's reach into new markets while increasing its footprint to now $14.5 billion under management across more than 200 customer engagements. Together, the two companies offer a comprehensive recurring revenue solution for both subscription and traditional businesses. The transaction closed today and is expected to be accretive to non-GAAP EPS in 2015.

(Emphasis added.)

25. The statements referenced above were materially false and misleading when made because they misrepresented and failed to disclose that Defendants have never held more than $5 million in gross revenues, and have never managed funds, let alone in the 10 figure range.

26. The fraudulent statements contained in the Press Release were also included in a public securities filing that ServiceSource filed on January 22, 2014.

27. Not only did the Press Release conceal Defendants' true financial condition from would-be investors, it also inflated that condition by a factor of 700.

28. Defendants knowingly and intentionally overstated the value of Defendants' equity and failed to disclose that Scout's cash position was precarious at best.

29. The fraudulent statements contained in the Press Release induced Plaintiff and members of the Plaintiff Class to purchase shares of stock in ServiceSource, and to do so at inflated prices.

30. On or about May 1, 2014, ServiceSource reported its financial results from the first quarter of 2014. Those financial results for the first time indicate the statements in the Press Release are fraudulent.

31. During the Class Period, Defendants materially misled the investing public,

1   thereby inflating the price of ServiceSource common stock, by publicly issuing false and

2   misleading statements and omitting to disclose material facts necessary to make

3   Defendants' statements, as set forth herein, not false and misleading. Said statements and

4   omissions were materially false and misleading in that they failed to disclose material

5   adverse information and misrepresented the truth about Defendants, their businesses and

6   operations, as alleged herein.

7        32.   At all relevant times, the material misrepresentations and omissions

8   particularized in this Complaint directly or proximately caused, or were a substantial

9   contributing cause of, the damages sustained by Plaintiff and other members of the Class.

10   As described herein, during the Class Period, Defendants made or caused to be made a

11   series of materially false or misleading statements about ServiceSource's business,

12   prospects and operations. These material misstatements and omissions had the cause and

13   effect of creating in the market an unrealistically positive assessment of Defendants, their

14   businesses, prospects and operations, thus causing ServiceSource's common stock to be

15   overvalued and artificially inflated at all relevant times. Defendants' materially false and

16   misleading statements during the Class Period resulted in Plaintiff and other members of

17   the Class purchasing ServiceSource's common stock at artificially inflated prices, thus

18   causing the damages complained of herein.

19                   **VI.   ADDITIONAL SCIENTER ALLEGATIONS**

20        33.   As alleged herein, Defendants acted with scienter in that Defendants knew, or

21   recklessly disregarded, that the public documents and statements they issued and

22   disseminated to the investing public in their own name during the Class Period were

23   materially false and misleading. Defendants knowingly and substantially participated or

24   acquiesced in the issuance or dissemination of such statements and documents as primary

25   violations of the federal securities laws.

26        34.   Defendants knew and/or recklessly disregarded the false and misleading nature

27   of the information which they caused to be disseminated to the investing public. The

28   fraudulent scheme described herein could not have been perpetrated during the Class

1  Period without the knowledge and complicity or, at least, the reckless disregard of

2  personnel at the highest levels of Scout and ServiceSource, including Smerklo.

3      35.    Smerklo, because of his position with ServiceSource, controlled the contents of

4  the Company's public statements during the Class Period. Smerklo was provided with or

5  had access to copies of the documents alleged herein to be false and/or misleading prior

6  to or shortly after their issuance and had the ability and opportunity to prevent their

7  issuance or cause them to be corrected. Because of his position and access to material

8  non-public information, Smerklo knew or recklessly disregarded that the adverse facts

9  specified herein had not been disclosed to and were being concealed from the public and

10  that the positive representations that were being made were false and misleading. As a

11  result, Smerklo is responsible for the accuracy of ServiceSource's corporate statements

12  and is therefore responsible and liable for the representations contained therein.

13      36.    Additionally, Defendants' materially false and/or misleading statements

14  alleged herein were made willfully so as to: (i) induce Plaintiff and members of the

15  Plaintiff Class to purchase shares of stock in ServiceSource, and to do so at inflated

16  prices; (ii) justify the payment of tens of millions of dollars in executive compensation to

17  the Individual Defendants and others; and (iii) allow certain insiders—including

18  Smerklo—to cash in by selling millions of dollars' worth of ServiceSource stock at

19  artificially inflated prices.

20  **VII. LOSS CAUSATION/ECONOMIC LOSS**

21      37.    During the Class Period, as detailed herein, Defendants engaged in a scheme to

22  deceive the market and a course of conduct that artificially inflated the price of

23  ServiceSource common stock and operated as a fraud or deceit on Class Period

24  purchasers of ServiceSource common stock by failing to disclose and misrepresenting the

25  adverse facts detailed herein. Defendants' false and misleading statements had the

26  intended effect and caused ServiceSource common stock to trade at artificially inflated

27  levels throughout the Class Period. When Defendants' prior misrepresentations and

28  fraudulent conduct were disclosed and became apparent to the market, the price of

1  ServiceSource common stock fell precipitously as the prior artificial inflation came out.

2  As a result of their purchases of ServiceSource common stock during the Class Period,

3  Plaintiff and the other Class members suffered economic loss, i.e., damages, under the

4  federal securities laws.

5      38.   By failing to disclose to investors the adverse facts detailed herein, Defendants

6  presented a misleading picture of ServiceSource's business and prospects. When the

7  truth about ServiceSource was revealed to the market, the price of ServiceSource

8  common stock fell precipitously. These declines removed the inflation from the price of

9  ServiceSource common stock, causing real economic loss to investors who had purchased

10  ServiceSource common stock during the Class Period.

11     39.   The declines in the price of ServiceSource common stock after the corrective

12  disclosures came to light were a direct result of the nature and extent of Defendants'

13  fraudulent misrepresentations being revealed to investors and the market. The timing and

14  magnitude of the price declines in ServiceSource common stock negate any inference that

15  the loss suffered by Plaintiff and the other Class members was caused by changed market

16  conditions, macroeconomic or industry factors or ServiceSource-specific facts unrelated

17  to Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by plaintiff

18  and the other Class members was a direct result of Defendants' fraudulent scheme to

19  artificially inflate the price of ServiceSource common stock and the subsequent significant

20  decline in the value of ServiceSource common stock when Defendants' prior

21  misrepresentations and other fraudulent conduct were revealed.

## VIII.   APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

24     40.   At all relevant times, the market for ServiceSource common stock was an

25  efficient market for the following reasons, among others:

26          a.   ServiceSource common stock met the requirements for listing, and was

27               listed and actively traded on the NASDAQ, a highly efficient, electronic

28               stock market;

b.   As a regulated issuer, ServiceSource filed periodic public reports with
     the SEC and the NASDAQ;

c.   ServiceSource regularly communicated with public investors via
     established market communication mechanisms, including regular
     disseminations of press releases on the national circuits of major
     newswire services and other wide-ranging public disclosures, such as
     communications with the financial press and other similar reporting
     services; and

d.   ServiceSource was followed by securities analysts employed by major
     brokerage firms who wrote reports which were distributed to the sales
     force and certain customers of their respective brokerage firms. Each of
     these reports was publicly available and entered the public marketplace.

41.   As a result of the foregoing, the market for ServiceSource common stock
promptly digested current information regarding ServiceSource from all publicly available
sources and reflected such information in the prices of the stock. Under these
circumstances, all purchasers of ServiceSource common stock during the Class Period
suffered similar injury through their purchase of ServiceSource common stock at
artificially inflated prices and a presumption of reliance applies.

## IX.   NO SAFE HARBOR

42.   The statutory safe harbor provided for forward-looking statements under
certain circumstances does not apply to any of the allegedly false statements pleaded in
this Complaint. Many of the specific statements pleaded herein were not identified as
"forward-looking statements" when made. To the extent there were any forward-looking
statements, there were no meaningful cautionary statements identifying important factors
that could cause actual results to differ materially from those in the purportedly forward-
looking statements. Alternatively, to the extent that the statutory safe harbor does apply
to any forward-looking statements pleaded herein, defendants are liable for those false
forward-looking statements because at the time each of those forward-looking statements

1  was made, the particular speaker knew that the particular forward-looking statement was

2  false, and/or the forward-looking statement was authorized and/or approved by an

3  executive officer of ServiceSource who knew that those statements were false when made.

4

5  ## X.   COUNT I: Violation of § 10(B) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

6      43.   Plaintiff repeats and realleges each and every allegation contained above as if

7  fully set forth herein.

8      44.   During the Class Period, Defendants disseminated or approved the materially

9  false and misleading statements specified above, which they knew or deliberately

10  disregarded were misleading in that they contained misrepresentations and failed to

11  disclose material facts necessary in order to make the statements made, in light of the

12  circumstances under which they were made, not misleading.

13      45.   These defendants: (a) employed devices, schemes, and artifices to defraud; (b)

14  made untrue statements of material fact and/or omitted to state material facts necessary

15  to make the statements made not misleading; and (c) engaged in acts, practices, and a

16  course of business which operated as a fraud and deceit upon the purchasers of the

17  ServiceSource's common stock during the Class Period.

18      46.   Plaintiff and the Class have suffered damages in that, in reliance on the

19  integrity of the market, they paid artificially inflated prices for ServiceSource common

20  stock. Plaintiff and the Class would not have purchased ServiceSource common stock at

21  the prices they paid, or at all, if they had been aware that the market prices had been

22  artificially and falsely inflated by these Defendants' misleading statements.

23      47.   As a direct and proximate result of these Defendants' wrongful conduct,

24  Plaintiff and the other members of the Class suffered damages in connection with their

25  purchases of ServiceSource common stock during the Class Period.

26  ## XI.  COUNT II: Violation of § 20(A) of The Exchange Act Against Smerklo

27      48.   Plaintiff repeats and realleges each and every allegation contained above as if

28  fully set forth herein.

49.   Smerklo acted as a controlling person of ServiceSource within the meaning of §20(a) of the Exchange Act as alleged herein. By reason of his position as an officer and/or director of ServiceSource, and his ownership of ServiceSource common stock, Smerklo had the power and authority to cause ServiceSource to engage in the wrongful conduct complained of herein. By reason of such conduct, Smerklo is liable pursuant to §20(a) of the Exchange Act.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

1.   Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

2.   Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

3.   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

4.   Such other and further relief as the Court may deem just and proper.

## XIII.  JURY DEMAND

Plaintiff hereby demands a trial by jury.


Dated July 8, 2015.


Respectfully Submitted,


**NEWMAN DU WORS LLP**


By: _____
John Du Wors, WSBA No. 33987
Attorney for Plaintiff Scott Weller

CLASS ACTION COMPLAINT