1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SCOTT WELLER,
Individually and on behalf all others
similarly situated

            v.

SCOUT ANALYTICS, INC., et al.,

            Defendants.

Case No.  5:15-cv-03170-EJD

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

Re: Dkt. No. 31

Scott Weller ("Plaintiff") brings this putative class action against Scout Analytics, Inc.,
ServiceSource International Inc., and the Chief Executive Officer ("CEO") of ServiceSource,
Mike Smerklo (collectively, "Defendants"), alleging violations of Sections 10(b) and 20(a) of the
Securities Exchange Act of 1934 and Rule 10b-5 of the U.S. Securities and Exchange Commission
("SEC") promulgated thereunder.  Compl. ¶ 2, Dkt. No. 1.  Plaintiffs bring this action individually
and on behalf of all other purchasers of ServiceSource stocks during the proposed class period of
January 22, 2014 and May 1, 2014, inclusive.  Compl. ¶ 1.

Presently before the court is Defendants' Motion to Dismiss for failure to state a claim
upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and for
failure to plead claims with the requisite level of particularity under Federal Rule of Civil
Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15
U.S.C. 78u-4 *et seq.* (1995).  Defs.' Mot. to Dismiss ("Mot.") at 3, Dkt. No. 31.  Having carefully
considered the papers submitted by both parties in this matter, the court finds Defendants' Motion
well-taken.  The Motion will therefore be granted for the reasons explained below.

Case No.: 5:15-cv-03170-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

## I.    BACKGROUND

### A.    Factual Background

Defendant Scout Analytics, Inc. ("Scout") is "is a cloud-based customer lifecycle management solution" company that offers "multiple platforms through which other companies – particularly information service providers, media publishers and software companies – leverage user data." Compl. ¶¶ 7, 21. More specifically, Scout provides analysis of customer subscription usage, spending, and other behaviors, allowing Scout's client-companies to align product and account management strategies so as to "maximize customer value and accelerate sustainable growth in revenue and profits." Compl. ¶ 7; Mot. at 3.

Defendant ServiceSource International Inc. ("ServiceSource") is a U.S. based company headquartered in San Francisco, California that provides "cloud-based recurring revenue management solutions," helping clients manage and optimize their "subscription and service-contract renewal process." Compl. ¶ 8; Mot. at 3. ServiceSource's stock trades on the NASDAQ under the ticker symbol "SREV." Compl. ¶ 8. Mike Smerklo ("Smerklo") is the President and CEO of ServiceSource. Compl. ¶ 9.

In early December of 2013, Plaintiff alleges that Scout was facing financial hardship and the company "predicted it would be out of cash within the first quarter of 2014." Compl. ¶ 22. Accordingly, the Board solicited outside financing proposals, including a proposal of acquisition by ServiceSource, which it accepted. Compl. ¶¶ 23, 24.

On January 22, 2014, ServiceSource officially acquired Scout, and at 4:05pm Eastern Standard Time, 1:05pm Pacific Standard Time, ServiceSource and Scout issued a joint press release announcing the acquisition ("the Press Release"). Compl. ¶ 24; see Mot. at 5. The first paragraph of the Press Release reads:

> ServiceSource® (NASDAQ:SREV), the global leader in recurring revenue management, today announced that it has acquired Scout Analytics®, a leading provider of predictive analytics for subscription businesses. With more than $3.5 billion of recurring revenue under management, Scout Analytics extends ServiceSource's reach into new markets while increasing its footprint to now $14.5 billion under management across more than

United States District Court
Northern District of California

2

Case No.: 5:15-cv-03170-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

> 200 customer engagements. Together, the two companies offer a comprehensive recurring revenue solution for both subscription and traditional businesses. The transaction closed today and is expected to be accretive to non-GAAP EPS in 2015.

Compl. ¶ 24.

The Press Release also goes on to provide, in relevant part, additional information about the concept of "recurring revenue" services and the companies' provision of such services, explaining:

> Recurring revenue is fast becoming a critical function for every company, spanning new subscription and cloud-based businesses, as well as established industries such as hardware, software, healthcare and industrials. As the "Internet of Things" connects businesses and people to a range of technology-enabled devices and cloud-based services, recurring revenue will play a pivotal role. As such, understanding how customers are using products and services is vital to today's businesses, not just for customer success and retention, but also for accelerating recurring revenue growth and profits.
>
> ….
>
> Headquartered in the Cloud Corridor of San Francisco, ServiceSource® manages over $11 billion in recurring revenue for the world's largest and most respected technology companies. ServiceSource renews a customer contract every 47 seconds through engagements in more than 150 countries and 40 languages.
>
> ….
>
> [Scout Analytics'] solutions are designed to reduce customer and revenue churn, increase renewal revenue yield, optimize rate plan performance, and maximize trial conversions. Scout Analytics can increase annual recurring revenues by up to 10-15%.

Decl. of Andrew R. Escobar ("Escobar Decl.), Ex. A, Dkt. No. 33-1;[1] see Decl. of Scott Weller

---

[1] Defendants' Request for Judicial Notice as to Exhibit A, the full Press Release containing the statement at issue in this case, is GRANTED. Defs.' Request for Judicial Notice ("RJN"), Dkt. No. 32. When ruling on a motion to dismiss, courts may consider documents incorporated by reference in a complaint or upon which a complaint necessarily relies, as well as matters subject to judicial notice. Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, (2007)). Federal Rule of Evidence 201 allows a court to take judicial notice of adjudicative facts "not subject to reasonable dispute in that [they are] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). It is appropriate for the courts to take judicial notice of press releases where, as here, such press releases form the basis of a plaintiff's claim. See In re Am. Apparel, Inc. S'holder Litig., 855 F. Supp. 2d 1043, 1062 (C.D. Cal. 2012) ("Courts in the Ninth Circuit routinely take judicial notice of press releases."); In re Netflix, Inc., Sec. Litig., 923 F. Supp. 2d 1214, 1218 n. 1 (N.D. Cal. 2013) (taking judicial notice of a press release).

United States District Court
Northern District of California

1    ("Weller Decl.") ¶ 2, Ex. 1, Dkt. Nos. 36, 36-1.

2        Plaintiff asserts that he "first read an online copy of the January 22, 2014 press release

3    referenced in the Complaint on ServiceSource's website on January 22, 2014 at approximately

4    1:35 p.m., Pacific Standard Time."  Weller Decl. ¶ 2.  Plaintiff represents that approximately 20

5    minutes later, he "initiated a market order to purchase 250 shares of ServiceSource stock" and that

6    he did so "[b]ased on the Press Release's statements about Defendants' revenue." [2]  Id. ¶ 3.

7        On May 1, 2014, ServiceSource released its quarterly financial report.  Compl. ¶ 30.  After

8    reading the quarterly report, Plaintiff concluded that the Press Release had significantly

9    misrepresented ServiceSource's financial condition.  Compl. ¶¶ 27-31.  Specifically, based on the

10   information  contained in the report, Plaintiff believed that the Press Release had "failed to

11   disclose that Defendants have never held more than $5 million in gross revenues, and have never

12   managed funds, let alone in the 10 figure range."  Compl. ¶ 25.  Thus, Plaintiff interpreted the

13   quarterly report as revealing that the Press Release had overstated "Defendants' true financial

14   condition…by a factor of 700."  Compl. ¶ 27.

15       At some point following the May 1st quarterly report, Plaintiff alleges without further

16   detail that "the price of ServiceSource common stock fell precipitously."  Compl. ¶¶ 37, 38.  As a

17   result, Plaintiff contends that he and other purchasers of ServiceSource stocks between January 22,

18   2014 and May 1, 2014, suffered economic damages.  Compl. ¶ 39.

19       **B.    Procedural Background**

20        On March 20, 2014, Plaintiff filed suit against Defendants in King County Superior Court

21   in Washington, alleging state securities fraud claims.  Weller v. Scout Analytics, Inc. et al,  No.

22   2:14-cv-00874-JLR (W.D. Wash 2014), Dkt. No. 1, (noticing removal of Weller v. Scout

23   Analytics, et al., No. 14-2-13781-8 SEA, from King County Superior Court in Washington). [3]  The

24

25   [2] While Plaintiff did not plead these specific facts in his Complaint – including when he read the
     Press Release, when he purchased the stock, or how much stock he purchased – Plaintiff submits a
     declaration containing this information in opposition to Defendants' Motion.  See Dkt. No. 36.
26   Additionally, Plaintiff has certified that he purchased 250 shares of ServiceSource stock on
     January 22, 2014, in accordance with 15 U.S.C. §78U–4(A)(2).  Dkt. No. 15, Ex. A at ¶ 4.
27
     [3] The court hereby takes judicial notice of Plaintiff's prior publicly filed lawsuits arising from the
28                                                    4
     Case No.: 5:15-cv-03170-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1   Washington state lawsuit was based on the same allegedly false and misleading statement in the

2   January Press Release at issue here.  Id.  Defendants removed the case to federal court in the

3   Western District of Washington and Plaintiff voluntarily dismissed the case the following day.  Id.,

4   Dkt. Nos. 1, 5.

5        On August 26, 2014, Plaintiff filed a federal securities action against Defendants in this

6   court, also based on the January 22 Press Release.  Weller v. Scout Analytics, et al., Case No. 14-

7   cv-05046-YGR (N.D. Cal. 2014), Dkt. No. 1.  However, on January 26, 2015, Plaintiff again

8   voluntarily dismissed his complaint.  Id., Dkt. No. 4.  Then, on July 8, 2015, Plaintiff filed the

9   operative Complaint in the present action.  Dkt. No. 1.  Defendants move to dismiss all claims

10  pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) .  Dkt. No. 31.

11  **II.   LEGAL STANDARD**

12       Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

13  specificity to "give the defendant fair notice of what the … claim is and the grounds upon which it

14  rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

15  complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

16  upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal of a claim under Rule

17  12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts

18  alleged under a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d

19  1097, 1104 (9th Cir. 2008); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

20  Moreover, the factual allegations "must be enough to raise a right to relief above the speculative

21  level" such that the claim "is plausible on its face."  Twombly, 550 U.S. at 556-57.

22       Claims that sound in fraud are subject to a heightened pleading standard.  Fed. R. Civ. P.

23  9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

24

25  same series of events at issue in this case - Weller v. Scout Analytics, Inc. et al,  No. 2:14-cv-
    00874-JLR (W.D. Wash 2014) and Weller v. Scout Analytics, et al., No. 14-cv-05046-YGR (N.D.
26  Cal. 2014).  Fed. R. Evid. 201(b)(2) (instructing that a court may take judicial notice of
    adjudicative facts "not subject to reasonable dispute in that [they are] . . . capable of accurate and
27  ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

28
    Case No.: 5:15-cv-03170-EJD
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   constituting fraud or mistake."); <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule

2   9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent").

3   The allegations must be specific enough to give defendants notice of the particular misconduct

4   which is alleged to constitute the fraud charged.  <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir.

5   1985).  To that end, the allegations must contain "an account of the time, place, and specific

6   content of the false representations as well as the identities of the parties to the

7   misrepresentations."  <u>Swartz</u>, 476 F.3d at 764l; <u>see</u> <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d

8   1097, 1106 (9th Cir.2003) (citation omitted) (explaining that averments of fraud must be

9   accompanied by the "who, what, when, where, and how" of the misconduct charged).

10  Additionally, "the plaintiff must plead facts explaining why the statement was false when it was

11  made."  <u>Smith v. Allstate Ins. Co.</u>, 160 F.Supp.2d 1150, 1152 (S.D.Cal. 2001) (citation omitted);

12  <u>see also</u> <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1549 (9th Cir.1994) (en banc) (superseded

13  by statute on other grounds).  In other words, fraud or claims asserting fraudulent conduct must

14  generally contain more specific facts than is necessary to support other causes of action.

15        At the motion to dismiss stage, the court must read and construe the complaint in the light

16  most favorable to the non-moving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–38 (9th

17  Cir. 1996).  The court must accept as true all "well-pleaded factual allegations."  <u>Ashcroft v. Iqbal</u>,

18  556 U.S. 662, 664 (2009).  However, "courts are not bound to accept as true a legal conclusion

19  couched as a factual allegation."  <u>Twombly</u>, 550 U.S. at 555.  "In all cases, evaluating a

20  complaint's plausibility is a context-specific endeavor that requires courts to draw on ... judicial

21  experience and common sense."  <u>Levitt v. Yelp! Inc.</u>, 765 F.3d 1123, 1135 (9th Cir. 2014)

22  (quoting <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011)).

23        When deciding whether to grant a motion to dismiss, the court generally "may not consider

24  any material beyond the pleadings."  <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d

25  1542, 1555 n. 19 (9th Cir. 1990).  However, the court may consider material submitted as part of

26  the complaint or relied upon in the complaint, and may also consider material subject to judicial

27  notice.  <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001).  In the event that a

28
                                                          6

1    motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that

2    the allegation of other facts consistent with the challenged pleading could not possibly cure the

3    deficiency.'"  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting

4    Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).

5    **III.    DISCUSSION**

6           **A.    Sufficiency of Plaintiff's 10(b) and 10b-5 Claims**

7           In their motion to dismiss, Defendants argue Plaintiff failed to state a claim under Section

8    10(b) of the Securities and Exchange Act ("Exchange Act") or SEC Rule 10b-5 that satisfies the

9    PSLRA's heightened pleading standards.  Section 10(b) of the Exchange Act provides that it shall

10   be unlawful for any person "to use or employ, in connection with the purchase or sale of any

11   security … any manipulative or deceptive device or contrivance in contravention of such rules and

12   regulations."  15 U.S.C. § 78(b).  SEC Rule 10b-5 implements this provision by making it

13   unlawful for any person "to make any untrue statement of a material fact or to omit to state a

14   material fact necessary in order to make the statements made, in the light of the circumstances

15   under which they were made, not misleading."  17 C.F.R. §240.10b-5(b).

16          Plaintiff alleges that Defendants engaged in a scheme to defraud the market when it issued

17   the materially false and misleading Press Release in violation of section 10(b) and 10b-5.  To

18   adequately state such a claim, Plaintiff must allege facts sufficient to establish: "(1) a material

19   misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the

20   misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

21   misrepresentation or omission; (5) economic loss; and (6) loss causation."  Matrixx Initiatives,

22   Inc. v. Siracusano, 563 U.S. 27, 37-38 (2011) (quoting Stoneridge Inv. Partners LLC v. Scientific-

23   Atlanta, Inc., 552 U.S. 148, 157 (2008)).  Defendants challenge the adequacy of Plaintiff's 10(b)

24   and 10b-5 allegations on the grounds that he has failed to plead facts sufficient to establish a

25   material misstatement or scienter.  Each will be addressed in turn.

26                **i.    False or Materially Misleading Statement or Omission**

27          Defendants first argue that Plaintiff has failed to identify any statement in the Complaint

28   
7
Case No.: 5:15-cv-03170-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    that is false or materially misleading under the PSLRA.  To adequately plead falsity or a material

2    misrepresentation under Section 10(b), the plaintiff must specify each statement alleged to have

3    been misleading and the reason(s) why the statement is false or misleading; if those allegations are

4    made on information and belief, the complaint must also "state with particularity all facts on

5    which that belief is formed."  15 U.S.C. § 78u–4(b)(1); see also In re Daou Sys., Inc., 411 F.3d

6    1006, 1014 (9th Cir. 2005); Mulligan v. Impax Labs., Inc., 36 F. Supp. 3d 942, 959 (N.D. Cal.

7    2014).

8         A material omission is one that a reasonable investor would consider to significantly alter

9    the total mix of information.  Matrixx, 131 S. Ct. at 1317.  For an omission to be misleading, "it

10   must affirmatively create an impression of a state of affairs that differs in a material way from the

11   one that actually exists."  Brody v. Transitional Hosp. Corp., 280 F.3d 997, 1006 (9th Cir. 2002).

12   "[A] statement that is technically true, may still be misleading and actionable under securities laws

13   where it" creates such an impression.  In re MGM Mirage Sec. Litig., 2013 WL 5435832, at *4

14   (D. Nev. 2013) (quoting Brody, 280 F.3d at 1006).  "Silence, absent a duty to disclose is not

15   misleading under Rule 10b-5."  Basic v. Levinson, 485 U.S. 224, 238, 239, n.17.

16        Here, the only statement Plaintiff identifies as false and materially misleading is the first

17   paragraph of the January 22 Press Release; specifically, the sentence: "***With more than $3.5***

18   ***billion of recurring revenue under management***, Scout Analytics extends ServiceSource's reach

19   into new markets while increasing its footprint to ***now $14.5 billion under management*** across

20   more than 200 customer engagements."  Compl. ¶ 24; Opp. at 2-3 (emphasis in Pl. Opp.).  The

21   reason Plaintiff contends this statement is false and materially misleading is "because

22   [Defendants] misrepresented and failed to disclose that Defendants have never held more than $5

23   million in gross revenues, and have never managed funds, let alone in the 10 figure range."

24   Compl. ¶ 25.  Plaintiff therefore contends that the information disseminated by way of this Press

25   Release "conceal[ed] Defendants' true financial condition from would-be investors" and "inflated

26   that condition by a factor of 700."  Compl. ¶¶ 27, 29, 45.

27        Plaintiff's argument is premised on a misreading of the statement contained in the Press

28

Case No.: 5:15-cv-03170-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Release that is neither plausible nor reasonable.  It appears that Plaintiff understood the Press

2    Release's references to "recurring revenue" or "recurring revenue under management" to be

3    synonymous with representations of Defendants' own gross revenue.  See id.; Opp. 3.  However,

4    the court agrees with Defendants that no reasonable investor could read the Press Release in the

5    way Plaintiff suggests.  Not only is the term "recurring revenue under management" on its face

6    distinct from the term gross revenue, which itself has a specific and widely understood definition,

7    but the concept of "recurring revenue management" is further explained and referenced in the

8    Press Release in such a manner as to avoid such confusion.  For instance, the very next paragraph

9    of the Press Release states:  "Recurring revenue is fast becoming a critical function for every

10   company, spanning new subscription and cloud-based businesses, as well as established industries

11   such as hardware, software, healthcare and industrials."  Ex. A, Escobar Decl.; Ex. 1, Weller Decl.

12   With respect to Defendants, the Press Release also provides, "ServiceSource® *manages over $11*

13   *billion in recurring revenue* for the world's largest and most respected technology companies"

14   and "Scout Analytics *can increase annual recurring revenues* by up to 10-15%."  Id.

15        The suggestion that Defendants intended to mislead investors into believing that the

16   statements about the companies' recurring revenue management services were in reference to the

17   companies' own gross revenue is simply not a plausible interpretation of the above statements.[4]  In

18   addition to being an unreasonable reading of the plain language of the Press Release, Plaintiff's

19   theory is also inconsistent with the information that ServiceSource publicly disclosed in its 10-K

20   and 10-K/A filings with the SEC.[5]  Escobar Decl., Exs. C, D, E, and F, Dkt. Nos. 33-3–33-6.  For

21   example, ServiceSource's March 17, 2015 Form 10-K/A filed with the SEC states:  "Our total

22   revenue was $272.2 million, $272.5 million and $243.7 million for the years ended December 31,

23

24   [4] Indeed, replacing the concept of "recurring revenue" with the concept of "gross revenue," as
     Plaintiff purportedly read the Press Release to do, renders the statement incoherent and illogical.

25   [5] Defendants' Request for Judicial Notice of Exhibits C-F, Defendants' public SEC filings from
     2009-2015, is GRANTED to the extent referenced in this Order.  Dkt. No. 32.  In a securities
26   fraud case such as this one, judicial notice of such documents is generally appropriate.  See In re
     Copper Mountain Sec. Litig., 311 F. Supp. 2d 857, 863–64 (N.D. Cal. 2004) (taking judicial
27   notice of various SEC filings).

28                                                    9
     Case No.: 5:15-cv-03170-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1    2014, 2013 and 2012, respectively." Escobar Decl., Ex. F at 6, Dkt. No. 33-6.  These filings

2    report gross revenue as a separate and independent statistic from revenues under management.  Id.

3          Moreover, the reasons Plaintiff offers as to "why the statement is false or misleading" bear

4    no connection to the substance of the statement itself.   That is, Plaintiff alleges Defendants "have

5    never held more than $5 million in gross revenues," but the Press Release does not mention "gross

6    revenue."  See Compl. ¶¶ 25-28; Ex. A, Escobar Decl; Ex. 1, Weller Decl; see also 15 U.S.C. §

7    78u–4(b)(1).  While the court accepts Plaintiff's factual allegations as true for the purposes of this

8    Motion, as plead here, Defendants' gross revenue has no bearing on whether the Press Release's

9    statement about the defendant companies' recurring revenue management services was false or

10   misleading.  See Brody, 280 F.3d at 1006 (rejecting the plaintiffs' argument that a company had a

11   duty to disclose information regarding an imminent merger in a press release because it was not

12   referred to or supported by the text of the actual press release).

13         Plaintiff also alleges that Defendants "have never managed funds, let alone in the 10 figure

14   range."  Compl. ¶ 25.  While this reason is arguably tethered to concepts addressed in the Press

15   Release, Plaintiff offers no further explanation of what he means by "managed funds," or what

16   basis he has for this assertion.  See Compl. ¶ 5; Opp. at 3.  To the extent Plaintiff is equating the

17   concept of "recurring revenue management" with a distinct concept of "fund management," such

18   as in the context of financial markets, Plaintiff again misunderstands the basic language of the

19   Press Release, which includes no such reference.  See id.  To the extent Plaintiff is suggesting that

20   Defendants do not actually provide the recurring revenue management services – in kind or to the

21   degree – that they market themselves as providing, this claim is not clearly alleged or supported by

22   the Complaint.  Plaintiff therefore fails to satisfy even Rule 8(a)'s requirement that the claims

23   alleged provide sufficient specificity to give Defendants "fair notice of what the … claim is and

24   the grounds upon which it rests," much less the heightened pleading standard required by Rule

25   9(b) and the PSLRA.  See Twombly, 550 U.S. at 555; see Mendiondo, 521 F.3d at 1104; 15

26   U.S.C. 78u-4; Daou, 411 F.3d at 1014.

27         Finally, Plaintiff suggests that the Press Release "conceal[d] Defendants' true financial

28
                                                    10
     Case No.: 5:15-cv-03170-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    condition," "overstated the value of Defendants' equity and failed to disclose that Scout's cash

2    position was precarious at best." Compl. ¶¶ 27-28.  As discussed above, no reasonable investor

3    could read the Press Release as a purported claim about Defendants' gross revenue or equity.  As

4    to Defendant Scout's "precarious" financial position, the allegations in the Complaint suggest that

5    the information about Scout's financial trouble was already known to the market.  See Compl. ¶

6    22 ("In early December 2013, Scout and its Board predicted that it would be out of cash within the

7    first quarter of 2014. So they solicited and received proposals for financing.").  Even if this

8    information was not known to the market, nothing in the Complaint suggests that Defendants were

9    under an obligation to disclose it in the Press Release announcing ServiceSource's acquisition of

10   Scout and discussing the recurring revenue management services offered by the companies.

11   Brody, 280 F.3d at 1006 (finding that a press release had not misled investors about an imminent

12   merger where the "actual press release…neither stated nor implied anything regarding a merger,"

13   explaining that "Rule 10b–5 and Section 14(e) in terms prohibit *only* misleading and untrue

14   statements, not statements that are incomplete.") (emphasis in original).  Because the Press

15   Release did not specifically or even generally address issues of the companies' equity or

16   individual financial circumstances, Defendants were not under a duty to include specific

17   information related thereto.  See id.

18          In sum, the Complaint fails to allege facts to support the allegation that the Press Release

19   issued by Defendants was false or misleading.  Plaintiff is therefore unable state a claim under

20   Section 10(b) and Rule 10b-5.  See Matrixx, 563 U.S. at 37-38.  Accordingly, Defendants' Motion

21   to Dismiss is GRANTED as to Plaintiff's first cause of action for violation of Section 10(b) of the

22   Exchange Act and Rule 10b-5 promulgated thereunder.

23          ii.    **Scienter**

24          Even if Plaintiff sufficiently alleged false or misleading statements, the Complaint must

25   nevertheless be dismissed because Plaintiff failed to properly plead facts giving rise to a strong

26   inference of scienter.  In addition to sufficiently alleging falsity, plaintiffs in securities fraud

27   actions must state with particularity facts evidencing "the defendant's intention 'to deceive,

28
11
Case No.: 5:15-cv-03170-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    manipulate, or defraud.'"   Tellabs, 551 U.S. at 313 (quoting Ernst & Ernst v. Hochfelder, 425 U.S.

2    185, 194 at n.12 (1976)); see Reese v. Malone, 747 F.3d 557, 568 (9th Cir. 2014).   "To adequately

3    plead scienter, the complaint must 'state with particularity facts giving rise to *a strong inference*

4    that the defendant acted with the required state of mind.'"   Reese, 747 F.3d at 568 (quoting 15

5    U.S.C. § 78u–4(b)(2)(A)) (emphasis in original).   That is, a plaintiff must allege specific facts

6    suggesting that "the defendant made false or misleading statements either *intentionally* or with

7    *deliberate recklessness*."   Id. at 569 (emphasis in original).   A strong inference of scienter requires

8    more than mere plausibility; the inference "must be cogent and at least as compelling as any

9    opposing inference of nonfraudulent intent."   Tellabs, 551 U.S. at 314.

10         Here, Plaintiff attempts to satisfy the scienter element under the theory that the magnitude

11   of the difference between Defendants' "present revenue" and the recurring revenue figure

12   announced in the Press Release is so significant as to constitute an "extreme departure" from the

13   standards of ordinary care such that any reasonable actor would have known it was misleading.

14   See Opp. at 11.   However, for the reasons already discussed, this argument is unavailing in light of

15   the fact that the Press Release neither addressed nor made any claims regarding Defendants'

16   present revenue.   And, even if a reasonable investor could confuse the Press Release's use of the

17   term "recurring revenue" for a statement about Defendants' gross revenue – which the court holds

18   is not the case – the fact that these concepts are wholly distinct would nevertheless suggest that

19   any such confusion was not intentional or deliberate on the part of Defendants.   Dismissal is

20   therefore also appropriate because Plaintiff has failed to adequately plead scienter.

21         **B.     Sufficiency of Plaintiff's Section 20(a) Claim**

22         Plaintiff's second and final cause of action asserts a Section 20(a) claim against Smerklo,

23   the President and CEO of ServiceSource.   Compl. ¶ 49.

24         Section 20(a) of the Exchange Act provides that certain "controlling" individuals may be

25   held liable for violations of § 10(b) and its underlying regulations.   In re VeriFone Holdings, Inc.

26   Sec. Litig., 704 F.3d 694, 711 (9th Cir. 2012); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d

27   981, 990 (9th Cir. 2009), as amended (Feb. 10, 2009).   In relevant part, § 20(a) stats that:

28

United States District Court
Northern District of California

12
Case No.: 5:15-cv-03170-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person ... is liable ... unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

To prevail on its claim under Section 20(a), a plaintiff must demonstrate "a primary violation of federal securities law" and that "the defendant exercised actual power over the primary violator." VeriFone, 704 F.3d at 711(quoting Zucco, 552 F.3d at 990).  "Section 20(a) claims may be dismissed summarily… if a plaintiff fails to adequately plead a primary violation of section 10(b)."  Id.

Having found that Plaintiff has failed to adequately allege a primary violation under Section 10(b), the court finds that Plaintiff cannot state a controlling person liability claim against Smerklo under Section 20(a).  Defendant's Motion is therefore GRANTED as to Plaintiff's second cause of action.

## IV.     ORDER

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No 31) is GRANTED. All claims in the Complaint are DISMISSED WITH LEAVE TO AMEND.

Any amended complaint must be filed on or before **February 20, 2017**, and must be consistent with the discussion above.  Plaintiff is advised that, although leave to amend has been permitted, he may not add new claims or new parties to this action without first obtaining Defendants'' consent or leave of court pursuant to Federal Rule of Civil Procedure 15.  The court will dismiss this action without further notice for failure to prosecute under Federal Rule of Civil Procedure 41(b) if an amended complaint is not filed by the deadline designated herein.

Plaintiff is further advised that, pursuant to Federal Rule of Civil Procedure Rule 41(a)(1), an action may be voluntarily dismissed by the plaintiff "before the opposing party serves either an answer or a motion for summary judgment," or by stipulation from all parties who have appeared. Fed. R. Civ. P. 41(a)(1)(A).  Unless otherwise stated, such a voluntary dismissal is presumed to be

1   "without prejudice." 41(a)(1)(B).  However, "if the plaintiff previously dismissed any federal- or

2   state-court action based on or including the same claim, a notice of dismissal operates as an

3   adjudication on the merits."  Id.; see also Commercial Space Mgmt. Co. v. Boeing Co., 193 F.3d

4   1074, 1076 (9th Cir. 1999) ("a voluntary dismissal of a second action operates as a dismissal on

5   the merits if the plaintiff has previously dismissed an action involving the same claims. This is

6   known as the "two dismissal rule.").  Accordingly, in light of the two prior lawsuits Plaintiff has

7   filed and then voluntarily dismissed concerning the same subject matter at issue here, any

8   voluntarily dismissal of this action going forward will be considered a dismissal on the merits and

9   may preclude him from refiling a future action alleging the same facts and legal claims.

10          IT IS FURTHER ORDERED that the Case Management Conference presently set for

11  February 2, 2017 is VACATED as moot.

12          **IT IS SO ORDERED.**

13  Dated: January 31, 2017

14                                                          _____
                                                            EDWARD J. DAVILA
15                                                          United States District Judge

United States District Court
Northern District of California

14

Case No.: 5:15-cv-03170-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS